1    Todd E. Zenger (*pro hac vice* UT Bar)
     Duren IP, PC
2    610 E. South Temple Street
     Suite 300
3    Salt Lake City, UT 84102
     801-869-8535
4    Email: tzenger@durenip.com

5    Jeffrey J. Whitehead (NV Bar 3183)
     Whitehead & Burnett
6    6980 O'Bannon Dr.
     Las Vegas, NV 89117
7    702-267-6500
     Fax: 702-267-6262
8    Email: jeff@whiteheadburnett.com

9    *Attorneys for Emanation Communications Group LC*

10              **IN THE UNITED STATES DISTRICT COURT**
                **FOR THE DISTRICT OF NEVADA**

11

| | |
|---|---|
| 12   LEX VEST LTD, a Nevada limited liability company; | Case no. 2:22-cv-01226-ART-BNW |
| 13          Plaintiff, | |
| 14       v. | DECLARATION OF |
| 15   EMANATION COMMUNICATIONS | JENNIFER KARONY |
| 16   GROUP LC, a Utah limited liability company; DOES 1 through 50; and ROE | |
| 17   ENTITIES 51 through 100, inclusive, | |
| 18          Defendants. | |
| 19 | |

20

21          The declarant, Jennifer Karony, states as follows:

22

23    1.      I am a citizen of the United States.  I am over 21 years of age.

1

2.      I make these statement from my own personal knowledge.

3.      I am the managing member of Emanation Communications Group LC ("ECG").

4.      I have first-hand knowledge of all material business operations, finances, records, assets, liabilities, property and expenses of ECG.

5.      I am a former Central Intelligence Agency Officer with a TS SCI Full-scope Polygraph residing in the State of Utah.  I am the mother of Braden John Karony, Intervenor ("John Karony" or "John").

6.      I have studied the factual allegations of Plaintiff's motion for temporary restraining order and preliminary injunction.  Many material facts are incorrect, false and/or misleading.

**REBUTTAL FACTS**

7.      Plaintiff is a hard money lender.  Plaintiff is not a participant in the telecommunications or antenna market.  Plaintiff is not a competitor in the telecommunications or antenna market.  Plaintiff provides money loans, not antenna market presence or influence.

8.      The asserted loan obligated Plaintiff to disburse loan money to ECG on a certain time schedule.  ECG was relying on timely loan disbursements during critical development and production cycles.  Plaintiff was required to provide a full payment of $250,000 by August 1, 2022.  Plaintiff failed to do so.  Plaintiff provided only one-fifth of the promised $500,000 payment on September 1, 2022. This failure to timely provide money caused material disruption and interference to ECG's product development and manufacturing processes.  Plaintiff is first to materially breach the loan agreement.

9.      No material Event of Default under Loan agreement has occurred that was not caused by Plaintiff.  ECG had met all material milestones. Plaintiff has sought to impose artificial milestones incongruous with the ongoing product development and manufacturing efforts of ECG.  ECG is first preparing antenna products to serve the telecommunications market.  ECG has successfully done so after completing the required hundreds of analytical product development steps and testing.  Plaintiff has foisted upon ECG a substantially unrelated product application, a remote-control toy ("Toy"), demanding that it be used as a milestone.  ECG has informed Plaintiff many times that the Toy application would also require the same arduous, lengthy analytical product development steps and testing which are not possible in the short time frame demanded by Plaintiff.  Plaintiff is attempting to manufacture purported events of default to position Plaintiff to liquidate ECG.

10.     As to any deficiencies in ECG's current product development for telecommunications applications, all purported deficiencies have been or could have been curable within ten days.  Even as to cure efforts Plaintiff has interfered.  For example, Plaintiff has interfered with critical resources and product development cycles of ECG by withholding money, demanding that ECG cease certain critical path development, causing ECG time and resources to be diverted by filing suit against ECG all thereby diverting many, many human resource hours that would otherwise have been spent on continued product development.  To date, no material insufficiency in proof of technology identified by Plaintiff has not been cured or could not have been cured in ten days but for Plaintiff's inference.

11.     ECG vigorously disputes Plaintiff's asserted entitlement to seizure of collateral because no material Event of Default has occurred.

12.     To the extent Plaintiff asserts worry or harm about loan repayment, Plaintiff has caused it.  Plaintiff's asserted seizure of assets and collateral spawned the Utah litigation, further interfering with ECG's critical product development cycles.  The Utah litigation is based on allegations of Plaintiff absconding with ECG assets.  This litigation and the Utah litigation has caused ECG significant and material harm and losses as to money, time, product and manufacturing development and entry to market.

13.     In the absence of any material Event of Default, the loan is not due.  Nevertheless, ECG has pledged to Plaintiff 3+ times collateral to loan value.  There is and remains no immediate or imminent threat to Plaintiff's ability to be made whole if and when the loan becomes due.

14.     While asserting control of ECG assets and collateral, Plaintiff has instructed ECG to continue to use assets and collateral for furtherance of company business.  All disputed assets and collateral are present and accounted for at ECG's place of business.

15.     ECG has pledged no collateral to another.  ECG will only pledge any of the disputed collateral if and when cleared by the courts.

16.     ECG has used and uses proper protective procedures to avoid making any public disclosures of its technology or product development.  For example, Plaintiff admits in its motion paper that ECG required Plaintiff to enter into a non-disclosure arrangement ("NDA") before ECG would share proprietary information with the Plaintiff lender.  The NDA has served its purpose with Plaintiff to keep proprietary information proprietary.  Plaintiff does not dispute this.  ECG has made no public, enabling disclose of its

technology.  ECG has not threatened and does not threaten to make such disclosures.
Doing so would be against the best interests of ECG.  ECG business plans include the
requirement to refrain from making public, enabling disclosures of ECG products and
technology unless and until intellectual property rights are otherwise preserved or
secured.

17.     It is in the best interest of ECG to use and continue to use non-disclosure non-
compete non-circumvention agreements to protect proprietary products and technology
from public disclosure during further ECG product development and when seeking
further funding.  This also preserves related intellectual property.  Plaintiff is entirely
unable to provide any evidence that this procedure of ECG will not continue.  This
procedure of ECG requires no intervention from the court.

Dated this 7th day of September 2022.

Jennifer Karony